Martin SCHACHTER; Barbara Schachter, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 99–71436.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2001

Filed July 3, 2001

Martin A. Schainbaum and David B. Porter, San Francisco, California, for the appellants.

A. Wray Muoio, Attorney, Tax Division, Department of Justice, Washington, D.C., for the appellee.

Before: HUG, NOONAN, and W. FLETCHER, Circuit Judges.

## ORDER AND OPINION

HUG, Circuit Judge:

### ORDER

The "Request for Publication of Memorandum Disposition" is GRANTED. The Memorandum disposition filed March 22, 2001, is redesignated as an authored Opinion by Judge Hug. There are minor modifications to the disposition.

### OPINION

In this case we decide whether the Tax Court erred in finding that the taxpayers had not provided credible evidence of partnership expenses in determining their taxable income. Further, we must decide whether the Tax Court erred in determining the taxpayers were not entitled to have a credit for the previously paid criminal fine applied to the civil fine imposed by that court. We affirm the Tax Court's decision.

### BACKGROUND

Martin Schachter and David Karp operated Cal Ben, a wholesale soap distribution business, as equal partners. For tax years 1985–1988, a certified public accountant prepared Cal Ben's tax returns based on Cal Ben's sales journals. During this time period, the accountant was not informed of Cal Ben's various unreported sales, along with a bank account where proceeds from the unreported sales were deposited. Because of the unreported sales, the total sales receipts of Cal Ben, and taxable income of the Schachters, were under-reported to the IRS.

Funds from the unreported sales were used to buy tax-exempt bearer bonds in the Schachters' names. The Schachters cashed the interest coupons associated with the bonds, and purchased personal items and services, including a facelift, a yacht, and a carpet for their residence. In December of 1987, Martin Schachter purchased a BMW with cash for $72,451, and the BMW dealership reported the cash transaction to the IRS. The IRS proceeded with an audit of Cal Ben for the years 1985–1988, and the case was eventually referred to the IRS's Criminal Investigation Division.

In September of 1993, Martin Schachter pled guilty to one count of conspiracy to defraud the United States with respect to income taxes and to one count of tax evasion.[1] He was sentenced to two years

---

1. Both Martin Schachter and David Karp were indicted, but shortly after being indicted, Karp died.

imprisonment, fined $250,000, and ordered to pay $161,845 in restitution to the IRS.

In December of 1995, the Schachters received a notice of deficiency from the IRS for income tax deficiencies for 1985–1988, based on an increase in the Schachters' income due to the unreported partnership income. The notice also indicated additions to tax for fraud and negligence, pursuant to 26 U.S.C. § 6653, and for substantial underpayment, pursuant to 26 U.S.C. § 6661.[2]

In determining the deficiencies, the IRS allowed deductions for costs recorded in Cal Ben's books and records that were claimed on its partnership tax returns, but it disallowed additional deductions. The Schachters challenged the IRS's determinations in the tax court and argued that Cal Ben's unreported sales were offset by additional deductible business expenses that had been paid from the unreported sales.

The Tax Court found that, with minor exceptions, Cal Ben was not entitled to the additional business deductions. The Tax Court properly based its rulings upon sections of the Code that were applicable to the tax years in issue. The court explained that the Schachters did not present credible evidence in the form of receipts and invoices, and offered only speculative testimony and general survey data.

The Schachters also filed a Rule 155 computation, claiming that a credit should be allowed against the civil fraud penalties under § 6653(b) for the criminal fine. The Tax Court allowed the Schachters a credit for the $161,845 restitution already paid. The Schachters argued that because the criminal fine was also remedial in nature, they also deserved a credit for the criminal

fine. The Tax Court rejected the claim, holding that unlike the civil fine, the purpose of the criminal fine was punishment.

The Tax Court had subject matter jurisdiction under 26 U.S.C. § 6214(a). We have appellate jurisdiction under 26 U.S.C. § 7482.

## ANALYSIS

■ We review the Tax Court's factual findings underlying its decision to deny additional business expenses under the clearly erroneous standard. *Norgaard v. Commissioner,* 939 F.2d 874, 877 (9th Cir. 1991). Whether the Schachters are entitled to a credit or offset for the civil penalty due to a previously imposed criminal penalty is a question of law reviewable de novo. *Baizer v. Commissioner,* 204 F.3d 1231, 1233 (9th Cir.2000).

■ The Schachters argue that the Tax Court erroneously equated gross receipts with taxable income when it disallowed additional business expenses in determining taxable income. However, the court did allow deductions reported on the income tax returns for 1985–1988, and allowed additional expenses for consulting fees and truck depreciation. When the IRS has established that the taxpayer has received more income than reported, a presumption arises that the deductions and exclusions listed by a taxpayer in his or her return are all that existed. *United States v. Bender,* 218 F.2d 869, 871 (7th Cir.1955).

■ The Schachters contend that they could not produce direct evidence showing additional expenses because of their inadequate books and records. They had a duty, however, to maintain sufficient records in order to establish deductions

**2.** All section references are to the United States Code ("Code") in effect for the tax years at issue.

claimed. *See* 26 U.S.C. § 6001. Lacking direct evidence, the Schachters provided testimony regarding additional Cal Ben expenses to establish they should be allowed the deductions. The question of whether a taxpayer is allowed a deduction for particular expenses is a question of fact to be established by the taxpayer's evidence, the credibility of the taxpayer, and the credibility of supporting witnesses. *See Norgaard*, 939 F.2d at 878. Because direct evidence is lacking, the taxpayer's credibility is critical. *Id.* Also, the Tax Court determines the credibility of the proffered testimony. *McKay v. Commissioner*, 886 F.2d 1237, 1238 (9th Cir.1989). Even though the taxpayers' testimony and expert testimony can be relevant in establishing taxable income,[3] the Tax Court determined that the evidence the Schachters provided for additional unclaimed expenses was not credible. The Schachters submitted industry surveys and data from the IRS Statistics of Income Bulletin to demonstrate that the net profits of Cal Ben that they claimed on their returns were comparable to those of other companies in the industry. The Tax Court concluded the survey data and statistics were too general. Also, the Tax Court explained that in light of Cal Ben's unreported sales, the inadequate books and records, the undisclosed bank account, the personal purchases, and the Schachters lack of cooperation, the general survey data was of little persuasive value.

 The Schachters also argue that Cal Ben's net profit percentages filed on the 1994–1995 tax returns corroborate the Schachters' argument that during 1985–1988, Cal Ben's actual profit margins were much lower than those reflected by the audit adjustments, and thus Cal Ben must have incurred the additional expenses. However, the Tax Court found that Cal Ben's sales, receipts and income for 1994 are not indicative of earlier years because Cal Ben had incurred extraordinary legal fees during 1994 and 1995. Further, Cal Ben was managed by others while Martin Schachter was serving time in prison. These findings were not clearly erroneous.

We also conclude that the Tax Court did not clearly err when it rejected the Schachters' testimony that personal purchases made out of the undisclosed bank account were made from nontaxable capital savings from earlier years. The district court found, the large personal expenses and bonds were purchased from unreported sales of Cal Ben.

 The Schachters also argue they are entitled to a credit or offset for the civil penalties under § 6553(b) because both the civil penalties and the previously imposed criminal fine are remedial in nature. We disagree. Civil penalties for additions to tax are remedial in nature and are primarily imposed to reimburse the Government for investigation expenses, to cover the monetary loss due to the taxpayer's fraud, and to protect revenue. *Louis v. Commissioner*, 170 F.3d 1232, 1235 (9th Cir.1999); *see also Helvering v. Mitchell*, 303 U.S. 391, 401, 58 S.Ct. 630, 82 L.Ed. 917 (1938). By contrast, Martin Schachter's criminal penalty, imposed under 18 U.S.C. §§ 3622 and 3623,[4] is punitive in nature. The legislative history of these

---

3. *See Rubin v. Comm'r*, T.C.M. (CCH) 1094 (1954).

4. Schachter committed his offenses before November 1, 1987, and thus the criminal fine was imposed under 18 U.S.C. §§ 3622 and 3623, enacted as part of the Criminal Fine Enforcement Act of 1984, Pub.L. No. 98–596 § 6(a), 98 Stat. 3136–3137 (1984). This applies to fines for crimes that were committed between December 31, 1984 and November 1, 1987. *See, e.g., United States v. Elkins*, 885 F.2d 775, 790 (11th Cir.1989).

For offenses committed after November 1, 1987, sections 3622 and 3623 were repealed and replaced by 18 U.S.C. §§ 3571 and 3572.

statutes explain that the purpose for the criminal penalties is punitive, and not remedial in nature. To illustrate, the legislative history explains that the "purposes of the legislation are to make criminal fines more severe and thereby to encourage their more frequent use as an alternative, or in addition to, imprisonment." H.R.Rep. No. 98–906, at 1 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5433. Further, the legislative history explains that the fines needed to be more severe than in the past, because the previous fines had been inadequate in deterring behavior. *Id.* at 5433.

The factors to be considered in the sentencing statute, including the consideration of the person's income, earning capacity, and financial resources, are to help ensure that "realistic fines are more likely to be collected," and that "greater equity in *punishment* will be fostered." *Id.* at 5435 (emphasis added). Also, the legislative history explains that "[i]f a fine is to be an effective *punishment*, it must be collected promptly and in full." *Id.* (emphasis added). Thus, the purpose of the criminal statutes is to impose punishment, while the purpose of the civil penalty is remedial.

Finally, allowing the Schachters a credit for the criminal penalty already paid is inconsistent with the idea that tax fraud is subject to both criminal and civil sanctions. *See Louis*, 170 F.3d at 1235.[5]

AFFIRMED

---

5. The court also explained that Congress could impose both criminal and civil penalties for the same fraudulent behavior without violating the Double Jeopardy Clause of the Fifth Amendment. *Id.*